## LOCKHART v. SMITH.

1. WARRANT OF ATTACHMENT—MOTION TO VACATE—PRACTICE.—Affidavits containing matters cumulative or additional to those submitted to the clerk, when he issues a warrant of attachment upon an agricultural lien, cannot be used by lienee on motion to vacate.

2. FINDING OF FACT, that first levy under warrant of attachment was released before second made, affirmed.

3. AGRICULTURAL LIEN—WORDS AND PHRASES—REV. STAT., 2514, CONSTRUED—REMEDY—WARRANT OF ATTACHMENT—INDORSER.— A person indorsing a note for a farmer, which he uses as collateral in obtaining money and supplies used in making a crop, is such a person, under sec. 2514 of Rev. Stat., as makes advances to be used in the cultivation of a crop, and he can enforce an agricultural lien against such crop, given him by the farmer to secure him in such indorsement.

Before WATTS, J., Florence, December, 1895. Affirmed.

Proceeding by W. J. Lockhart against D. L. Smith to foreclose an agricultural lien for breach of conditions. Clerk issued warrant, and sheriff seized the crops. The defendant moved to vacate the attachment. Motion refused. He appeals.

*Messrs. Thompson & Kershaw*, for appellant, cite: 3 S. C., 46; Rev. Stat., 2514; 13 S. E. R., 132; 42 S. C., 348; 24 S. C., 196; 38 S. C., 484.

*Messrs. Woods & Shipp*, and *J. P. McNeill*, contra, made no argument.

July 20, 1897. The opinion of the Court was delivered by

MR. JUSTICE POPE. On the 15th day of January, 1895, D. L. Smith applied to W. A. Lockhart to indorse his note for $450, stating that he wanted money or supplies with which to make a crop during that year, and offering to give him a lien on all the crops he should make during the year to secure the note so indorsed. The note was indorsed and is as follows: "Cartersville, S. C., January 15, 1895. On December 1st, 1895, I promise to pay to W. A. Lockhart the

sum of $450, at office of Worth & Worth, Wilmington, N. C. Value received. D. L. Smith. Indorsed by W. A. Lockhart, J. S. Morrell, J. M. Humphreys." The lien is the usual agricultural lien in use in this State, signed under seal by lienor and lienee, and registered or recorded in the office of the register of mesne conveyance for Florence County, in the State of South Carolina. Upon the note thus executed and indorsed, merchandise—that is, farm supplies—was purchased by D. L. Smith, of the firm of Worth & Worth, of the city of Wilmington, N. C. In October, 1895, the said Smith sold some agricultural products covered by the lien, and did not apply the proceeds of such sales to the payment of the note. Thereupon the plaintiff, W. A. Lockhart, applied to and obtained from the clerk of the court of common pleas for Florence County the usual warrant for the seizure of Smith's crops. To this proceeding Smith appeared, and on his motion the clerk vacated the same. Shortly after this a similar proceeding was instituted for the same purpose, accompanied by Lockhart's affidavit embodying the foregoing facts, the warrant to seize the crops was issued by the clerk of court, and the crops taken possession of by Sheriff McLendon of said Florence County. D. L. Smith then served notice that, in the absence of the Judge of the Third Circuit from said Circuit, he would apply before his Honor, Judge Watts, at Cheraw, at 11 o'clock on the 4th day of December, 1895, to vacate such warrant. His grounds therefor were as follows: "1st. Because it appears on the face of said proceedings, statement of account and affidavits thereto attached, and affidavits hereto attached, that the said alleged lien was given to secure an indorsement by the plaintiff for the defendant. 2d. Because it appears upon the face of said proceedings, statement of account and affidavit thereto attached, and affidavits hereto attached, that no advances were made under said alleged lien, but that same was intended purely as security for an indorsement. 3d. Because it appears on the face of said proceedings, and the statement of account and affidavit

8—50

thereto attached, that the said W. A. Lockhart has not, nor
ever had, a lien on the crops of the defendant for agricul-
tural advances or otherwise. 4th. Because it appears, on
the face of said proceedings, statement of account and affi-
davit thereto attached, and the affidavit hereto attached,
that the alleged advances were made by Worth & Worth,
of Wilmington, N. C., directly to the defendant. 5th. Be-
cause it appears from the affidavits hereto attached that
at the time of the issuance of the warrant herein the pro-
perty seized under said warrant was in the hands of the
sheriff of aforesaid county, under a warrant to seize crops
of defendant, issued by the said clerk on the 25th of Octo-
ber, A. D. 1895, to enforce said alleged lien between same
parties and affecting same subject matter, and before said
proceedings were terminated by delivery of the property so
seized to the defendant. 6th. And the undersigned will
further move, at the same time and place, for an order va-
cating and setting aside the alleged levy and seizure under
the warrant herein of the crops of the defendant, because
it appears, from the affidavits hereto attached, that at the
time of said attempted levy or seizure the said crops were
in the hands of the said sheriff, under a previous warrant
issued by said clerk to enforce said alleged lien, and be-
tween same parties and affecting the same subject matter,
and which said warrant had been vacated by said clerk,
and the said property had never since the first seizure been
redelivered to the defendant or in his possession or control."
The following is the affidavit of D. L. Smith: "Personally
appeared D. L. Smith, who, on oath, says: That he is de-
fendant in above entitled proceedings. Deponent denies
that plaintiff, W. A. Lockhart, has ever made any advances
of any nature or kind whatsoever under the alleged lien
set forth in this proceeding, nor is anything due thereon,
nor is the lien described therein as a lien a lien on the crops
of defendant. Deponent further alleges, that at or about
the time of the execution of the said alleged lien, deponent
asked plaintiff to indorse a note for him to the amount of

$450; that thereupon deponent drew and signed a note payable on its face to said Lockhart, and the said Lockhart thereupon indorsed the same and delivered it to the deponent; that afterwards deponent procured additional indorsements on said note of J. M. Humphreys and Sam. Morrell; that afterwards deponent deposited said indorsed note as collateral security with Worth & Worth, Wilmington, N. C., and on the security of which procured, from time to time, during the current year, money and supplies from said firm of Worth & Worth; that such advancements were made by said Worth & Worth directly to this deponent; all bills for same were made out in deponent's name and charged to deponent; in fact, the only connection plaintiff ever had with said advancements was the aforesaid indorsement; that said account with said Worth & Worth, and the said indorsed note in the hands of Worth & Worth, are due and payable on December 1st, 1895. That deponent has sold of said crops only the sum of $84, to pay his current expenses in harvesting and preparing same for market, etc., and the sum of $50 for a small quantity of tobacco raised by one of his share croppers. Deponent has ample crops on hand to meet said account when due, and which deponent expects to pay promptly, if he is not ruined by the oppressive and scandalous course of W. A. Lockhart." Other affidavits were submitted by defendant, namely, that of Mrs. Rosette Smith, relating to the visit of the deputy sheriff to her husband's premises in his absence; another affidavit from D. L. Smith, denying that the sheriff had ever turned back into his hands his crops seized under the warrant issued on 6th November, 1895; the affidavit of J. W. McCown, as clerk of circuit court of Florence County, that he had, on the 25th October, 1895, issued the warrant to seize defendant's crops, but that, on 6th November, 1895, on defendant's motion, had vacated the same, but had afterwards issued the present warrant; also a statement from Worth & Worth, by which it appears that $100 in cash and $361.84 in supplies had been furnished said

D. L. Smith. On the day of the hearing before Judge Watts, the plaintiff offered affidavits, in reply to the allegations of defendant, by which it appeared that the sheriff had released the levy upon the crops seized under the warrant issued on 25th October, 1895, before he levied upon the same under the warrant on 6th November, 1895; that the plaintiff, instead of acting oppressively to defendant, went to him, when he heard that he had sold one bale of cotton to Smith and used the proceeds of such sale for his own purposes, and remonstrated with him as to such conduct, and that the defendant there and then promised to do so no more, but, on the contrary, that he would thereafter apply the proceeds of his crops to the payment of this debt of $450. Other affidavits were submitted that were cumulative merely. After the hearing of all these papers and argument, Judge Watts refused the motion of defendant to discharge the warrant of attachment. Thereafter the defendant appealed to this Court, on the following grounds:

1. That the Circuit Judge committed error in allowing the affidavits of Jesse L. McLendon, J. M. Humphreys, R. O. Lockhart, J. S. Morrell, and W. U. Lockhart at the hearing, over the objections of defendant, that he had no notice of same or opportunity to reply thereto, and that said affidavits were cumulative and additional to grounds and evidence upon which clerk issued warrant or order for seizure.

2. That the Circuit Judge committed error in not holding that the warrant or order for seizure and the alleged levy thereunder were null and void, and in not vacating same, because the property attempted to be seized was at the time in the hands of the sheriff of Florence County under a warrant to seize the same crops of defendant, and issued by the clerk of court of said county on the 25th October, 1895, to enforce the alleged lien sought to be enforced in this proceeding, and between the same parties, affecting same subject matter, and before the said prior proceedings were terminated by delivery of the property so seized to the defendant.

3. That the Circuit Judge committed error in not vacating said warrant or order of seizure on the ground that no advances were ever made by the plaintiff under the said alleged lien, the said alleged lien having been given to secure an indorsement.    4. That the Circuit Judge committed error in holding that the plaintiff had an agricultural lien for advances on crops of the defendant, and in refusing defendant's motion to vacate the warrant or order issued by the clerk to seize the crops of the defendant.    5. The Circuit Judge erred in holding that the defendant was estopped to deny the validity of plaintiff's alleged lien.

We will now consider the questions here presented. The appellant is quite correct in his contention that affidavits, presenting matters cumulative or additional to the facts set out in the application to the clerk when he issued his warrant, ought not to have been received by the Circuit Judge.    But some of the affidavits enumerated in the first ground of appeal were neither cumulative nor additional—they were strictly in reply to the allegations of defendant as to matters not embraced in plaintiff's showing before the clerk of the court.    Appellant seems to recognize that these latter affidavits were properly received. But under the views hereinafter to be expressed by us these matters are of no importance.    Indeed, they form no part of the real question upon which this cause must be decided. This exception is overruled.

So far as the second exception is concerned, where error is ascribed to the Circuit Judge in not holding that the property seized under the last warrant had not been released from the sheriff's levy under the first warrant issued on 25th October, 1895, it is not tenable.    The property of defendant was never removed from his premises under the first levy; it was claimed by the sheriff, and the buildings in which it was located were either locked by the sheriff or some other kindred act of appropriation was made by him.    On the 6th November the proceedings before the clerk, called the first proceedings, were, on defend-

ant's motion, vacated and set aside. This order of the clerk necessarily deprived the sheriff of any power under the law to hold the defendant's crops. In addition to this, the sheriff formally notified defendant, *on his premises*, that he released said property from the levy, and it was not until the day afterwards that the sheriff levied upon this property again. In view of this statement of facts, we cannot see how the Circuit Judge could have held any other view than that the levy under the first warrant, issued on 25th October, 1895, was released before any other levy was made thereon by the sheriff. This exception is overruled.

We will now consider the third, fourth, and fifth exceptions together. This contention grows out of the provisions of our law, as embodied in the 2514 section of the Revised Statutes of this State: "Any person who shall make any advance or advances, either in money or supplies, to any person or persons employed or about to engage in the cultivation of the soil, shall be entitled to a lien on the crop which may be made during the year, in the cultivation of which the advances so made have been expended," &c. It will be observed that the defendant does not deny that he executed a lien on his crops grown by him during the year; he bases his appeal upon the allegation that the plaintiff is not entitled to the benefits of section 2514 and 2517 of the Revised Statutes, because he says that plaintiff did not pay to him $450, or any part thereof, in money, nor did he, the plaintiff, furnish him the supplies with which he was enabled to make these crops during the year 1895; and because, he says, the plaintiff *only* indorsed a note for $450, upon which Worth & Worth, of Wilmington, N. C., did furnish the supplies. The question is forced upon us, under this statute, whether W. A. Lockhart can be said to be a person who has made advance or advances, in money or supplies, to D. L. Smith. Clearly the terms, "advances" "in money" or "supplies" are limited by the succeeding words, "have been expended," so that only an advance or advances, in money or supplies, to be expended

in the cultivation of the soil, can be said to be covered by the provisions of this section of the Revised Statutes. It is likewise noticeable that, by the terms thereof, the "person or persons" who shall make the advances above referred to includes any individual or individuals who may make this advance or these advances. It is also clear that the meaning of this section is, that to him who advances the means which are expended in the cultivation of the soil on the crops raised upon the soil during the year this cultivation takes place, is to be given this lien upon such crops, provided he complies with the law in having an agreement made in writing, and signed by the parties to be affected thereby. The difficulty is a little deeper down yet. What will answer the terms, "advance in money?" Will a check on a bank for money, or cotton bailed for market, be such an "advance in money?" In *Gaston* v. *Bradenburg*, 42 S. C., 348, we held that cotton so bailed would be treated as money. And certainly a check on a bank for money will be held to be an "advance in money." Can a note, upon which money is obtained from a corporation, a firm or individuals, be construed to mean an advance in money, when such money so raised is expended in the cultivation of the soil? If it is not an "advance in money," under these circumstances, what is it? Now, in the case at bar, the defendant concedes that he received $100 from Worth & Worth on this note, indorsed by W. A. Lockhart. It is true, he says that he placed it as collateral with said firm of Worth & Worth, but the fact remains that this money was obtained on, or through, this note as fully as if a check on a bank or cotton had been used. To that extent at least Lockhart may be said to have advanced money to the defendant, D. L. Smith, which was expended in the cultivation of the soil upon which the crops to be grown upon which soil, during the year 1895, he, Smith, on the 15th January, 1895, gave W. A. Lockhart this lien. But defendant concedes that he received from said firm by, or through, said note, supplies to the extent of certainly $362.84. And

the same reasoning would apply as to these supplies as that just adopted as to the $100 in cash. Indeed, it is only through the cash of $100 and the supplies of $362.84 that Worth & Worth can claim to be *bona fide* holders, for value, of this note for $450. We must be understood as confining our observations to the case at bar, where W. A. Lockhart and D. L. Smith confront each other as the only parties to this contention. D. L. Smith admits that he had made way with $134 as the proceeds of sale of crops grown by him on said premises covered by the lien. The rights of third persons are not in question. D. L. Smith should be forced to execute his solemn contract under seal, and placed by himself upon the records of the county of Florence. The parties solemnly bound themselves that this $450 should be expended in the cultivation of the soil upon which these crops now seized were raised, by the lien which was executed contemporaneously with the note for $450, and really as integral parts of one transaction. These exceptions are overruled.

It is the judgment of this Court, that the appeal be dismissed and the proceeding remanded to the Circuit Court.